UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Lisa Steele,

    Plaintiff,

v.                                      Case No. 14-11969

Susan Burek, Jon Shelden, and           Honorable Sean F. Cox
Nancy Fitzgerald Hoggard,

    Defendants.
_____/

**OPINION AND ORDER DENYING DEFENDANT BUREK'S MOTION TO DISMISS (Doc. #12) and GRANTING DEFENDANT HOGGARD'S MOTION TO DISMISS (Doc. #11)**

This is a defamation case. Plaintiff Lisa Steele ("Plaintiff") alleges that Defendants Susan Burek ("Burek"), Nancy Fitzgerald Hoggard ("Hoggard") and Jon Shelden ("Shelden") (collectively, "Defendants") made false, defamatory statements in numerous forums about Plaintiff and her book, "Fresh Eggs Daily: Raising Happy, Healthy Chickens . . . Naturally," which allegedly damaged Plaintiff's professional reputation and her business relationships.

This matter is before the Court on Defendant Burek's Motion to Dismiss For Failure to State A Claim, (Doc. #12), to which Defendant Shelden has joined (Doc. #25), and Defendant Hoggard's Motion to Dismiss For Lack of Personal Jurisdiction (Doc. #11). The motions have been fully briefed by the parties and the Court heard oral argument on the motions on October 30, 2014. For the reasons set forth below, the Court shall DENY Defendant Burek's motion and GRANT Defendant Hoggard's motion.

**BACKGROUND**

**Factual Background**

Plaintiff Lisa Steele lives in Virginia. (Amd. Compl., Doc. #8, at ¶ 1). Plaintiff is the author of a book entitled *Fresh Eggs Daily: Raising Happy, Healthy Chickens . . . Naturally*. ("Fresh Eggs Daily") (Amd. Compl., Doc. #8, at ¶ 7). *Fresh Eggs Daily* contains "advice and know-how on the subject of raising chickens and other poultry using organic and non-chemical means . . ." (Amd. Compl., Doc. #8, at ¶ 7).

Defendant Susan Burek is a Michigan resident and a blogger who also writes about organic poultry farming. (Amd. Compl., Doc. #8, at ¶¶ 2, 8).

Beginning sometime in early 2014, according to Plaintiff, Burek began waging a war against Plaintiff in order to "remove from circulation [Plaintiff's book, *Fresh Eggs Daily*] that Burek views as a competitive product to a book that she intends to publish." (Amd. Compl., Doc. #8, at ¶ 13). Plaintiff makes numerous allegations regarding the types of actions Burek took to attack Plaintiff personally and professionally. Below are a few key examples of Burek's allegedly offensive conduct:

- Burek sent a letter to Plaintiff and to her publisher, St. Lynn's Press, alleging that Plaintiff committed copyright infringement of Burek's blog posts. (Amd. Compl., Doc. #8, at ¶ 9);

- Burek stated on a Facebook page "of a related publication," that is "Liked" by more than 250,000 people: "I have legal action filed against Ms. Steele and St. Lynn's publishing for intellectual property theft," even though that statement was not true. (Amd. Compl., Doc. #8, at ¶ 15);

- Burek and Shelden "have orchestrated a group effort via online communications on Facebook and elsewhere, to seed negative reviews and vindictive feedback . . . for *Fresh Eggs Daily* . . . [and for Plaintiff's] anticipated future works . . . ." (Amd. Compl., Doc. #8, at ¶ 22).

Plaintiff further alleges that Defendant Burek recruited others to assist her in waging this offensive against her, including Defendants Hoggard and Shelden.

Defendant Hoggard is a Nevada resident. (Amd. Compl., Doc. #8, at ¶ 4). Plaintiff alleges that Hoggard assisted Burek by stating that she was "going to contact Better Homes & Gardens," at their editorial office in New York, New York to inform them about Plaintiff's alleged copyright infringement and "to persuade that publication not to accept contributions from [Plaintiff]." (Amd. Compl., Doc. #8, at ¶¶ 23-24).

Defendant Shelden is a Michigan resident. (Amd. Compl., Doc. #8, at ¶ 3). Plaintiff alleges that Defendant Shelden was involved in orchestrating the "group effort" against Plaintiff. (Amd. Compl., Doc. #8, at ¶ 22). Plaintiff also alleges that Shelden made various offensive comments in several online forums about Plaintiff and *Fresh Eggs Daily*. (Amd. Compl., Doc. #8, at ¶¶ 19-20, 22, 25-26, 35).

Plaintiff alleges that she was harmed by Defendants' activities because her publisher, St. Lynn's, "halted printing of the book, costing St. Lynn's and [Plaintiff] the opportunity to meet rising demand for the book . . . ." (Amd. Compl., Doc. #8, at ¶ 18).

**Procedural History**

On May 16, 2014, Plaintiff filed her Complaint against Defendants Burek, Shelden, and Hoggard based on their allegedly tortious conduct both online and offline. (Doc. #1). Plaintiff alleged both diversity and federal question jurisdiction. On June 26, 2014, Plaintiff filed a First Amended Complaint as of right. (Doc. #8). In her Amended Complaint, Plaintiff alleges the following causes of action:

    Count I -     Defamation against Burek and Shelden;
    Count II -    Defamation Per Se against All Defendants;
    Count III -   Tortious Interference with Contracts and Business Expectancies against All Defendants;
    Count IV -   Declaratory Judgment of Noninfringement of Copyright against

Burek.[1]

On July 11, 2014, Defendant Hoggard filed her Motion to Dismiss for Lack of Personal Jurisdiction. (Doc. #11). Plaintiff responded (Doc. #15) and Defendant Hoggard replied. (Doc. #17).

Also on July 11, 2014, Defendant Burek filed her Motion to Dismiss for Failure to State a Claim (Doc. #12). Plaintiff responded (Doc. #16) and Defendant Burek replied. (Doc. #18).

On October 17, 2014, Defendant Shelden appeared in this action (Doc. #24) after being served via alternate service. (*See* Order for Alternate Service, Doc. #21). On that same date, Defendant Shelden filed a "Notice of Joinder/Concurrence" to Defendant Burek's Motion to Dismiss. (Doc. #25).

## STANDARD OF DECISION

**A.     Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6)**

When deciding a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must construe the complaint in the light most favorable to the plaintiff and must accept all the factual allegations contained in the complaint as true. *Lambert v. Hartman*, 517 F.3d 433, 439 (6th Cir. 2008).

In order to survive a Rule 12(b)(6) motion to dismiss, Plaintiff's complaint need contain only "enough facts to state a claim for relief that is plausible on its face." *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it 'stops short of the line between possibility and plausibility of

---

[1] The parties have stipulated to the dismissal of Plaintiff's Count Four. (Stip. and Order, Doc. #13). Therefore, arguments pertaining to the issue of whether Burek owns a copyright have been omitted for the sake of efficiency.

4

entitlement to relief.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), *citing Twombly*, 550 U.S. at 557. "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

**B.    Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(2)**

In a motion to dismiss for want of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), the plaintiff has the burden of proving the court's jurisdiction over the defendant. *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 887 (6th Cir. 2002). "[I]n the face of a properly supported motion for dismissal, the plaintiff may not stand on his pleadings but must, by affidavit or otherwise, set forth specific facts showing that the court has jurisdiction." *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991). If the court finds no need for an evidentiary hearing, "the burden on the plaintiff is relatively slight" and the court must "consider the pleadings and affidavits in the light most favorable to the plaintiff." *Am. Greetings Corp. v. Cohn*, 839 F.2d 1164, 1169 (6th Cir. 1988), *citing Welsh v. Gibbs*, 631 F.2d 436, 438–39 (6th Cir. 1980). Where no evidentiary hearing is held, the plaintiff need only make a prima facie showing of jurisdiction to avoid dismissal. *Neogen*, 282 F.3d at 887.

However, "[i]f the district court concludes that the written submissions have raised issues of credibility or disputed issues of fact which require resolution, it may conduct a preliminary evidentiary hearing. Where this occurs the plaintiff must show by a preponderance of the evidence that jurisdiction exists." C*ohn*, 839 F.2d at 1169, *citing Data Disc, Inc. v. Systems Technology Associates, Inc*., 557 F.2d 1280, 1285 (9th Cir. 1977).

**ANALYSIS**

5

## I. Defendant Burek's Motion to Dismiss For Failure to State a Claim

### A. Defamation Claims

Defendant contends that Plaintiff's allegations, as they relate to her defamation claims, are insufficient because the allegedly defamatory statements are true, substantially true, or not plead with specificity. The parties focus on two statements that Plaintiff claims Burek made, and argues that neither are sufficient to sustain a defamation action:

> "I have legal action filed against Ms. Steele and St. Lynns publishing for intellectual property theft." (Amd. Compl. at ¶ 15);

> That Plaintiff has only four years of experience in the field of raising and caring for chickens. (Amd. Compl. at ¶ 40).

A federal court sitting in diversity applies the law of the state in which it sits. *In re Darvocet Prod. Liab. Lit.*, 756 F.3d 917, 937 (6th Cir. June 27, 2014). Under Michigan law, "[a] communication is defamatory if it tends to lower an individual's reputation in the community or deters third persons from associating or dealing with that individual." *Ireland v. Edwards*, 230 Mich. App. 607, 614 (1998), *citing New Franklin Enterprises v. Sabo,* 192 Mich. App. 219, 221 (1991). Not all defamatory statements are actionable, however. *Id.* Rather, "[i]f a statement cannot be reasonably interpreted as stating actual facts about the plaintiff, it is protected by the First Amendment." *Id.*, *citing Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 20 (1990).

To establish a claim for defamation, Plaintiff must show: (1) a false and defamatory statement concerning the plaintiff, (2) an unprivileged communication to a third party, (3) fault amounting to at least negligence on the part of the publisher, and (4) either actionability of the statement irrespective of special harm or the existence of special harm caused by publication. *Thomas M. Cooley Law Sch. v. Doe 1*, 300 Mich. App. 245, 262 (2013). Plaintiff must plead her

6

defamation claim with specificity by identifying the exact language that she alleges to be defamatory. *Id.*

Where, as here, Plaintiff alleges that defamatory statements were made in writing on the internet, the statements at issue are libelous rather than slanderous. *Stablein v. Schuster*, 183 Mich. App. 477, 480, 455 N.W.2d 315, 317 (1990) ("Libel may be defined as a statement of and concerning the plaintiff which is false in some material respect and is communicated to a third person by written or printed words and has a tendency to harm the plaintiff's reputation."). "For a claim of libel, a plaintiff must plead *the very words of the libel . . . .*" *Thomas M. Cooley*, 300 Mich. App. at 263 (internal citation and quotations omitted) (emphasis in original). "Because a plaintiff must include the words of the libel in the complaint, several questions of law can be resolved on the pleadings alone, including: (1) whether a statement is capable of being defamatory, (2) the nature of the speaker and the level of constitutional protections afforded the statement, and (3) whether actual malice exists, if the level of fault the plaintiff must show is actual malice." *Id.*

Plaintiff argues that Burek's proclamation that "I have legal action filed against Ms. Steele and St. Lynns publishing for intellectual property theft" is objectively false because, to date, no complaint has been filed against Plaintiff. (Pl. Resp. to Def. Burek's Mo., Doc. #16, at 1; *see also* Amd. Compl. ¶ 15). Plaintiff argues that it is *materially* false because "the difference between a baseless demand letter and the filing of a lawsuit is obvious, and it is substantial . . . the false statements by Burek about her supposed lawsuit were a major part of her concerted and consistent efforts to malign Steele and bring others to her cause." (Pl. Resp. to Burek's Mo., Doc. #16, at 2). For example, Plaintiff alleges that Burek's false statement about Plaintiff's "intellectual property theft" of Burek's work has induced other individuals to post negative reviews of Plaintiff's book on

7

Amazon.com, and in turn, these negative reviews have had a negative impact on online sales of Fresh Eggs Daily.  (Amd. Compl. ¶ 32).

Defendant Burek replies that, "by sending a cease and desist letter, Burek began the process of a legal action.  Whether she actually filed a complaint is immaterial. The 'gist' of her statement that she filed a legal action was substantially true."  (Def. Burek's Mo., Doc. #12, at 4).

The Court finds that Defendant Burek's statement regarding her filing of "legal action" against Plaintiff for "intellectual property theft" is a statement of fact and it is false.  The Seventh Circuit has considered a similar statement and determined that "the words 'legal action' can only be intended to mean some sort of lawsuit or official proceeding . . . it stretches reason to interpret 'legal action' as 'any activity of a lawyer . . . ."  *Republic Tobacco Co. v. N. Atl. Trading Co.*, 381 F.3d 717, 730 (7th Cir. 2004).  Thus, Defendant Burek's argument that "legal action" encompasses the communication of a demand letter is rejected.

The question then becomes whether Burek's statement is defamatory, i.e. whether it has the tendency "to lower an individual's reputation in the community or deter[] third persons from associating or dealing with that individual." *Ireland*, 230 Mich. App. at 614. The Court must decide as a matter of law whether a particular statement is defamatory.  *Nichols v. Moore*, 477 F.3d 396, 399 (6th Cir. 2007), *citing Fisher v. Detroit Free Press, Inc.*, 158 Mich. App. 409 (1987).

The Court finds the Seventh Circuit's analysis in *Republic Tobacco* persuasive.  In *Republic Tobacco*, defendant North Atlantic Trading Company believed that plaintiff was violating trademark and unfair competition laws to defendant's detriment.  *Republic Tobacco*, 381 F.3d at 722. Defendant stated in a letter to one of plaintiff's customers that "[w]e own the patent-trademark which has been violated . . . Our Attorneys initiated legal action . . . and had to include the Chain

8

in the Trademark-Patent violation." *Id.* at 723. The Seventh Circuit concluded not only that this statement was false, but also that it was defamatory, because "even if it were true [that plaintiff had been sued], the statement was not simply that [plaintiff] had been sued, but it provided factual detail about [plaintiff's] alleged inappropriate activity." *Id.* at 730.

The Court finds that Defendant Burek's statement that she "filed legal action" against Plaintiff for "intellectual property theft" is defamatory. As in *Republic Tobacco*, Defendant Burek not only stated that she initiated legal action against Plaintiff, but she also stated that she initiated legal action because Plaintiff committed intellectual property theft. The Court further finds that allegations of plagiarism are serious and have the tendency to lower an author's reputation in his or her community of fans and colleagues. Therefore, the Court finds that Plaintiff has stated a plausible cause of action for defamation based on Burek's "legal action" statement.

Plaintiff also argues that Burek's and Shelden's discounting of her experience (i.e. stating that Plaintiff has four years of experience rather than her actual six "or more" years of experience in organic chicken farming) is materially false because "it was made specifically by Burek for purposes of de-valuing Steele's expertise" and to harm her reputation. (Pl. Resp., Doc. #16, at 4). Defendant replies that there is no material difference between stating that Plaintiff has four years of experience rather than six years of experience. (Def. Reply, Doc. #18 at 2).

When viewing the allegations in the light most favorable to Plaintiff, the Court finds that Defendant's statement regarding Plaintiff's level of experience could plausibly be construed as defamatory. Defendant's statement is a representation of fact, that we must assume is false as Plaintiff has alleged, and was likely made with the intent of harming Plaintiff's reputation in their shared community.

9

Based on the foregoing, the Court shall DENY Defendant Burek's Motion to Dismiss Plaintiff's defamation claims.

### B. Tortious Interference Claim

Plaintiff alleges that Defendants Burek, Shelden and Hoggard have tortiously interfered with her contracts and prospective business relationships. (Amd. Compl., Doc. #8 at 13). In order to prevail on a tortious interference claim, Plaintiff must ultimately prove (1) the existence of a valid business relationship or expectancy; (2) knowledge of the relationship or expectancy on the part of the interferer; (3) an intentional interference inducing or causing a breach or termination of the relationship or expectancy; and (4) resultant damage to the party whose relationship or expectancy has been disrupted. *WHIC-USA, Inc. v. Carlisle*, 2005 WL 1959503 (Mich. Ct. App. Aug. 16, 2005), *citing Lakeshore Community Hosp, Inc v. Perry*, 212 Mich. App 396, 401 (1995).

Under Michigan law, the third element "requires the plaintiff to demonstrate that the third party was induced either to breach the contract or to break off the prospective business relationship by an intentional act that is either (1) wrongful per se; or (2) lawful, but done with malice and unjustified in law." *Warrior Sports, Inc. v. Nat'l Collegiate Athletic Ass'n*, 623 F.3d 281, 287 (6th Cir. 2010) (applying Michigan law) (citation and quotations omitted).

Defendant Burek argues, quite summarily, that the Court should dismiss this claim because "there is no allegation of anything unjustified or wrongful" in the Amended Complaint. (Def. Mo., Doc. #12, at 5).

Plaintiff responds that she has pleaded all the required elements of tortious interference, and has done so with sufficient particularity. Specifically, Plaintiff points to a few paragraphs of the Amended Complaint, where Plaintiff alleges:

52. Defendants Burek, Shelden, and Hoggard intentionally, and with the intention to cause harm to Steele, sought to disrupt and to deprive Steele of the value of ongoing economic activities and interests embodied in contracts and/or established business relationships and sales channels with the following, among others:

    a. St. Lynn's Press
    b. Amazon.com
    c. Barnes & Noble and its online arm at BN.com
    d. Better Homes and Gardens Magazine
    e. Hobby Farms Magazine

53. The Defendants achieved their desired interference by a coordinated combination of false and misleading statements, manufactured and strategically placed product reviews with online retailers of Steele's book Fresh Eggs Daily, and direct communications with representatives of publications for which Steele was a contributing writer.

54. These actions and communications have had their desired effect, as the potential sales of Fresh Eggs Daily, actual orders of Fresh Eggs Daily that have not been fulfilled, and Steele's business opportunities and revenue from Fresh Eggs Daily, St. Lynn's Press, and other outlets have been limited or ended.

55. As a result of the Defendants [sic] actions as described above and in this Count III, Steele has been damaged, in a precise amount to be proven by the evidence at trial.

(Amd. Compl. at ¶¶ 52-55). The crux of Plaintiff's tortious interference claim is that Defendants essentially "orchestrated a group effort . . . to seed negative reviews and vindictive feedback not only for Fresh Eggs Daily, but for Steele's anticipated future works . . . ," (Amd. Compl. at ¶ 22), in order to "remove a product [Burek] views as competitive from the market while she prepares her product to compete."[2] (Amd. Compl. at ¶ 30).

Viewing the Complaint in the light most favorable to Plaintiff, the Court finds that Plaintiff

---

[2] According to Plaintiff, Burek is in the process of writing a book on the same topic as Plaintiff's book.

11

has pleaded a plausible claim for tortious interference. If Plaintiff's allegations are indeed true, as this Court is required to assume for purposes of this motion, then it appears clear that Defendants Burek and Sheldon set out to cause Plaintiff economic harm by initiating a campaign of negative online reviews of Plaintiff's book and by notifying several of Plaintiff's business contacts that Burek "filed legal action" against Plaintiff for "intellectual property theft" (which is false).

Based on the foregoing, the Court finds that Plaintiff's allegations support a plausible claim for tortious interference. Therefore, the Court shall DENY Defendant Burek's Motion to Dismiss (Doc. #11) accordingly. Because Defendant Shelden has joined Defendant Burek's motion (Doc. #25) without making any additional argument, the Motion to Dismiss shall be denied as to him as well.

## II. Defendant Hoggard's Motion to Dismiss for Lack of Personal Jurisdiction

Defendant Nancy Fitzgerald Hoggard moves this Court for dismissal of Plaintiff's complaint for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2). Plaintiff bears the burden of establishing that this Court has personal jurisdiction over Defendant Hoggard. *Theunissen*, 935 F.2d at 1458.

Defendant Hoggard is a citizen of Nevada. Plaintiff is a citizen of Virginia. Defendants Shelden and Burek are citizens of Michigan. Plaintiff has brought suit against Defendant Hoggard for defamation *per se* and tortious interference with business contracts and expectancies (Amd. Compl., Doc. #8, at Counts II and III).

Personal jurisdiction over an out-of-state defendant arises from certain minimum contacts with the forum state such that maintenance of the suit does not offend "traditional notions of fair play and substantial justice." *Id.* (*quoting Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945)).

12

"Depending on the type of minimum contacts in a case, personal jurisdiction can either be specific or general." *Air Products and Controls, Inc.,* 503 F.3d at 550. General jurisdiction depends on a showing that the defendant has continuous and systematic contacts with the forum state to justify the state's exercise of judicial power with respect to any and all claims the plaintiff may have against the defendant. *Kerry Steel, Inc. v. Paragon Indus., Inc.,* 106 F.3d 147, 149 (6th Cir. 1997). Specific or limited personal jurisdiction "exposes the defendant to suit in the forum state only on claims that 'arise out of or relate to' a defendant's contacts with the forum." *Id.* Here, the parties appear to agree that Defendant Hoggard may be subject to specific, but not general, personal jurisdiction in Michigan.

A district court's analysis of personal jurisdiction over an out-of-state defendant generally entails two steps: 1) first, the court must determine whether the forum's relevant long-arm statute authorizes the exercise of jurisdiction over defendant; and, if so, 2) the court must determine whether the exercise of that jurisdiction comports with constitutional due process. *Id.*

However, "[t]he two inquiries merge where the forum state's long-arm statute extends, as does Michigan's long-arm statute, to the limits permitted under the due process clause." *Children's Orchard, Inc., v. Children's Orchard Store #142*, 2010 WL 2232440, at *4 (E.D. Mich. 2010) (*citing Mich. Coal. of Radioactive Material Users, Inc., v. Griepentrog*, 954 F.2d 1174, 1176 (6th Cir. 1992)). Therefore, this Court may focus its inquiry on whether the exercise of personal jurisdiction over Defendant Hoggard would violate the Due Process Clause of the Fourteenth Amendment of the U.S. Constitution. *Id.*

The Sixth Circuit has established a three-part test for determining whether the exercise of jurisdiction comports with due process:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Southern Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968). While these criteria are helpful, courts are not to "apply them mechanically because the inquiry into whether jurisdiction exists turns on the facts of the individual case at hand." *Chrysler Corp. v. Uptown Motorcars-Hartford, Inc.*, 173 F.3d 854, 1999 WL 196558 (6th Cir. 1999).

### I. Purposeful Availment

"[T]he question of whether a defendant has purposefully availed itself of the privilege of doing business in the forum state is 'the *sin qua non* for *in personam* jurisdiction.'" *Compuserve, Inc. v. Patterson*, 89 F.3d 1257, 1263 (6th Cir. 1996) (*quoting Mohasco Indus., Inc.*, 401 F.2d at 381-82). The purposeful availment requirement is satisfied when the defendant's contacts with the forum state create a substantial connection with the forum state, and when the defendant's conduct and connection with the forum are such that he "should reasonably anticipate being haled into court there." *Compuserve*, 89 F.3d at 1263. Purposeful availment is required to ensure that "random," "fortuitous," or "attenuated" contacts do not cause a defendant to be haled into a jurisdiction. *Id.*

Two distinct tests have evolved in cases dealing with the intersection of personal jurisdiction and internet activity. *Cadle Co. v. Schlichtmann*, 123 Fed. App'x 675, 677-79 (6th Cir. 2005) (noting that, to determine specific personal jurisdiction, *Zippo* applies when defendant operates a website and *Calder* applies when defendant has published or disseminated information); *Lifestyle Lift Holding co., Inc. v. Prendiville*, 768 F. Supp. 2d 929, 934-35 (E.D. Mich. March 9, 2011) (considering *Zippo* and *Calder* tests in internet libel case); *Farquharson v. Metz*, 2013 WL 3968018

14

at *2 (D. Mass. July 30, 2013) (applying *Calder* effects test to case involving allegedly defamatory statements posted on Facebook); *see also* Patrick J. Borchers, *Internet Libel: The Consequences of a Non-Rule Approach to Personal Jurisdiction*, 98 NW. U. L. REV. 473 (Winter 2004). The first test, known as the *Zippo* test, applies when a defendant operates a website that is "interactive to a degree that reveals specifically intended interaction with residents of the state." *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 890 (6th Cir. 2002), *citing Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1124 (W.D. Pa. 1997). If the interactivity of a defendant's website meets this criterion, then the defendant will be found to have purposefully availed itself of the privilege of acting in a particular state. *Id.*

The second test is known as the *Calder* effects test. *See Calder v. Jones*, 465 U.S. 783 (1984). The *Calder* effects test focuses on "the effects the conduct at issue had in the forum state." *Thomas v. Barrett*, 2012 WL 2952188 (W.D. Mich. 2012). Under *Calder*, "personal jurisdiction exists where an individual purposefully directs activities toward the forum state with the intent to cause harm there." *Scotts Co. v. Aventis S.A.*, 145 Fed. App'x 109, 113 (6th Cir. 2005).

The Court finds, and the parties agree, that the *Calder* effects test rather than the *Zippo* test is most appropriate here. The Court shall apply the *Calder* effects test to the facts of this case because Plaintiff has not alleged or shown that Defendant Hoggard maintains a website, interactive or otherwise, such that the *Zippo* test would be applicable.

Plaintiff argues that Defendant Hoggard has "purposefully availed herself of the privilege of acting in [Michigan], by participating in, being guided by, and reporting to the Michigan-based online torts group." (Pl. Resp., Doc. #15, at 3). At oral argument on this motion, Plaintiff expanded on this theory, arguing that Defendant Hoggard purposefully availed herself of the privilege of

15

acting in Michigan because she joined a Facebook group that was created and is administered by a Michigan resident.

Defendant Hoggard maintains that the *Calder* effects test has not been met because she "did not expressly aim to disseminate anything into Michigan, nor were the brunt of the effects felt in Michigan." (Def. Reply, Doc. #17, at 1).

The Court finds that Plaintiff has failed to show that Defendant Hoggard purposefully availed herself of the privilege of acting in Michigan under the *Calder* effects test. The *Calder* effects test cannot be met because Plaintiff has not alleged or shown that the effects of Defendant Hoggard's actions were felt in Michigan. Indeed, it appears undisputed that the effects of Hoggard's actions were felt in Virginia, where Plaintiff resides.

Furthermore, even if the Court were to accept Plaintiff's argument that Defendant Hoggard had contact with Michigan by virtue of her participation in a Michigan-based Facebook group, Plaintiff has failed to show that Defendant Hoggard *purposefully* directed her activity toward Michigan. Plaintiff has not shown that Defendant Hoggard knew that Defendants Burek and Shelden resided in Michigan. Thus, it is far from proven that Defendant Hoggard intended to join a <u>Michigan-based</u> or <u>Michigan-centric</u> Facebook group.[3] As far as the allegations show, Defendant Hoggard could have thought that she was joining a California-based torts group, or a New York-based torts group. Most importantly, Hoggard's own activities were directed at Plaintiff, who resides in Virginia. The Court finds that the purposeful availment prong has not been met.

---

[3] At oral argument on this motion, Plaintiff argued that the Facebook group was "located" in Michigan because it was created by, and is administered by, Burek, who is a Michigan resident. For purposes of the Court's personal jurisdictional analysis, the Court assumes without deciding that this Plaintiff's averment is correct in this regard.

16

### ii.     Arising Out Of Requirement

The second prong of the test requires that the cause of action must arise from Defendant's contacts with the forum state.  The Sixth Circuit has "articulated the standard for this prong in a number of different ways, such as whether the causes of action were 'made possible by' or 'lie in the wake of, the defendant's contacts, or whether the causes of action are 'related to' or 'connected with' the defendant's contacts with the forum state." *Air Prods. and Controls*, 503 F.3d at 553, *citing Youn v. Track, Inc.*, 324 F.3d 409, 419 (6th Cir. 2003) (internal citations omitted); s*ee also Compuserve, Inc. v. Patterson*, 89 F.3d 1257, 1267 (6th Cir. 1996) ("If a defendant's contacts with the forum state are related to the operative facts of the controversy, then an action will be deemed to have arisen from those contacts.")

In addition, the Sixth Circuit has "characterized this standard as a 'lenient standard' and has explained that the cause of action need not 'formally' arise from defendant's contacts." *Id.* (citing *Bird v. Parsons*, 289 F.3d 865, 875 (6th Cir. 2002)).

Plaintiff claims that "the cause of action arises out of Hoggard's activities in the forum state, which activities were Hoggard's group-directed torts, coordinated as part of her participation in the Michigan-based group."  (Pl. Resp., Doc. #15, at 3).

The Court finds that the "arising out of" requirement has not been met because Defendant Hoggard's alleged wrongdoing in this case did not arise out of her contacts with Michigan residents.  Rather, Plaintiff's causes of action against Defendant Hoggard arise out of her various postings on the internet that she made from behind her computer screen in Nevada.  (Amd. Compl. at ¶¶ 23-24) ("Defendant Hoggard took this online review strategy to a harmful extreme . . . . Hoggard posted, 'I am going to email the mags a [sic] listed a few minutes ago either today or tomorrow . . .' In a

17

separate post, Hoggard stated, 'I'm going to contact Better Homes & Gardens . . . .'").

In short, Plaintiff's alleged injuries did not arise from the fact that Burek, Shelden, and Hoggard were all members of a Facebook group that was created and administered by a Michigan resident. Therefore, the Court finds that Plaintiff has not carried her burden of showing that the "arising out of" requirement of the due process analysis has been met.

### iii.     The Reasonableness Requirement

In determining whether the exercise of jurisdiction is reasonable, the Court should consider the following factors: 1) the burden on the defendant; 2) the interest of the forum state; 3) the plaintiff's interest in obtaining relief; and 4) other states' interests in securing the most efficient resolution of the controversy. *Air Prods. and Controls, Inc.*, 503 F.3d at 554.

Where the first two prongs are met, "an inference of reasonableness arises" and "only the unusual case will not meet this third criteria." *Id.* As discussed above, that is not the case here.

Plaintiff argues that "the exercise of personal jurisdiction over Hoggard is reasonable based on the [sic] her contacts with the forum specific to these claims, as her actions were directed to the Michigan group and guided by the Michigan group." (Pl. Resp., Doc. #15, at 3).

The Court finds that Plaintiff's argument is without merit. The Court concludes that it would be patently unreasonable to subject a defendant to personal jurisdiction in a state solely because he or she joined a Facebook group that happened to be created by a citizen of that state. A finding that Michigan courts have personal jurisdiction over Defendant Hoggard in this situation would be the type of "random" assertion of *in personam* jurisdiction that offends due process.

The Court finds that it would violate Defendant Hoggard's due process rights for a Michigan court to exercise specific personal jurisdiction over her under the facts of this case. Therefore, the

18

Court shall GRANT Defendant Hoggard's Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(2).  The Court shall DENY Plaintiff's request to transfer the case to the Eastern District of Virginia.

## CONCLUSION

For the foregoing reasons, the Court shall DENY Defendant Burek's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) (Doc. #12) and GRANT Defendant Hoggard's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(2) (Doc. #11).

**IT IS SO ORDERED.**

S/Sean F. Cox
Sean F. Cox
United States District Judge

Dated:  November 20, 2014

I hereby certify that a copy of the foregoing document was served upon counsel of record on November 20, 2014, by electronic and/or ordinary mail.

S/Jennifer McCoy
Case Manager